Sanchez-Arvizu. May it please the court. Your honors, the district court committed a reversible plane error by imposing a 16 level enhancement for a crime of violence under 201.2 based on Mr. Sanchez-Arvizu's conviction for indecency with a child under 17 in light of the Supreme Court ruling on Esquivel-Quintana. The government concedes here that the error was plain in light of Esquivel-Quintana, which held that minor for purposes of sexual abuse of a minor is a person under 17. I'm sorry, under 16, excuse me. Given that concession, I'm sorry, your honor. No, no, go ahead. Given that concession, I will move on to the third and fourth prongs of plane error. Before you do, is this not a case where there's some other ground for aggravated, an aggravated crime for 16 level enhancement? You know, we have had several of these other ones where some other sexual abuse of a minor can kick in that's not directly that technical one that has the Esquivel-Quintana issue. Is this, is this the only, this is the only way that the 16 enhancement came about? I think so, your honor. I mean, it hasn't been briefed, so I would say it's been waived, and the government's conceded it. So I would take that as a waiver. I haven't, forgive me, I haven't thought through it because it wasn't an issue in the briefing. Okay. But standing here today, that's the only one I can think of. Because some of the, some of the sexual abuse of the minor variants don't have the 17 issue. And so that's why I was, I was wondering that's. Some of them might not, but the statute under which he was convicted explicitly was indecency with a child under 17, and under 17 was the element that, that was operative, your honor. So I would say, standing here today, there, there would be no other enhancement. And the government has conceded it, so I would say if there were, it's been waived at this point. So it would have been an 8-level enhancement otherwise? Correct, your honor. And the, the correct range would have been 15 to 21 months, which would, which was 21 to 27 months below the 42-month sentence. And that does bring us to the third prong of plain error. Under Molina-Martinez, when the incorrect, when an incorrect guideline range is used, that's usually sufficient to show a reasonable probability of a different outcome absent the error. And the record in this case shows that the sentence was anchored to the guidelines. The judge, the court repeatedly said that it was not going to vary upward or downward from the sentencing guideline range. When imposing sentence, the judge thought about the top end and low end of the guideline range and said the top end might have been the proper sentence given that it was the first illegal reentry. And the court considered the new guidelines not yet into effect, but only as a departure. And the statutory penalty is 20 years? Is that correct? Up to 20 years? Yes, your honor. Okay. Thank you. Under 1326, under the residual clause of 1326B2, this court has held that under the residual clause as opposed to the use of force clause, it is an aggravated felony. Okay. What's problematic about Flair here? One thing that's problematic about it is that the district court looked at this possible range, this lower range, because people brought it to her attention that in November that the statute would, that the range would change. And she expressed some shock and chagrin that it would be so low and she said that she wouldn't sentence that low. So it's as if she already considered this lower range when someone was telling her about the change in November and she compared to the 20 years when she told the defendant, you know, you're lucky to be getting this 41 months. And so that's problematic here, the sentencing transcript for you, don't you think? I don't think so, your honor. And I don't think so because under the third prong of plain error, the question is, were the guidelines the framework for the sentence or were they anchored, was the sentence anchored to the guidelines? The judge considered the not yet in existence November 2016 guidelines as a departure or variance. And the court says, said she wasn't going to do that but then said I'm not going to vary or depart. I think the court will see in the same sentence or the sentence immediately following, the court says I'm not going to vary or depart. So the court was looking at that range as a departure. And it's not really clear what the court was considering because defense counsel said 15 to 21 months but the probation officer said 1 to 7 months. So it's not clear which the court was rejecting as a variance or a departure. In addition, had the court used the correct guideline range, there's nothing in the record to show that the court would have departed upward to 42 months or 30 months or 34 months or 35 months or even 39 months. So under the third error of plain, under the third prong of plain error, the operative question is, was the sentence linked to the guideline range? And the answer is yes. But what do you do when she says, but let me make something clear. I think a sentence of 51 months, and that's higher in the range than she actually imposed, would be entirely appropriate. You were deported and came back in six months. Your conviction, which was three years ago, involved you assaulting a 13-year-old when you were a 28-year-old grown man. So yes, we've got serious concerns about your reasons for coming back into this country. You're a sexual predator. The state does require you to register for the rest of your life. So if you think 42 months is high, you need to remember that you're actually facing up to 20 years in prison. That's your reality. If you don't like it, if you think our laws are too strict, I'll make it easy for you. Stop breaking them. Stay in Mexico. That's the district court at, which doesn't sound like she would be amenable to a lower sentence. It doesn't sound like it's very good news for your client. Well, what it sounds like is she's linked to the guideline range because she said you could get the 51-month sentence. Had it been, let's just say it had been 30 to 37 months and she'd given him 31 months, she might have said then, well, you know what, I could give you the 37-month sentence. You could get the high end and the high end would be appropriate. So we're not asking whether it was appropriate, you know, at the high end or the low end. We're asking was the sentence linked to the guidelines? And clearly it is because she was looking at the high end and the low end. And there's no way to know that if it had been 30 to 37 months that she wouldn't have said, you know what, I gave you 31 months, but you're hemming and hawing, I could give you 37. Under Miller, the court, as this court said in Miller, the court never said, stated explicitly and unequivocally that the imposed sentence was the correct sentence regardless of the applicable guideline range. And that's the standard. Not whether the court said I should have given you the high end of this to the erroneous guideline range. And it clearly was. So we send it back? I mean, assuming, assuming your argument that she needs to reconsider the sentence, would we send it back or would we just decide what the sentence was here in view of the... Your Honor, I believe you should send it back. And just not to bleed into the fourth prong, but under Martinez-Rodriguez, which you authored, Your Honor, and Judge Elwood, you were on the panel, the disparity there was a bit greater, 36 months, but you explicitly said in the opinion, look, given the disparity, we're going to send it back, but we're not saying what the district court should do. And I think that's proper here, just as in Martinez... It seems like kind of a futility, given the comments that this judge has made. A remand is not good news for your client necessarily. Well, we don't know that, Your Honor, do we? Well, I think, well, we know it unless you want to know the judge. Well, no, we know that the high end of the guideline range is... She can go beyond that if she wishes. She can go, but do we know that she's going to go to 32? Well, I mean, your client is not a very, I mean, you know, he's not a sympathetic sort of person. Well, he's got... His crimes are not sympathetic. I don't know what kind of guy he is, but he certainly, his crimes are not sympathetic. He's not close to the defendant in Martinez-Rodriguez where this court remanded. I mean, look at that defendant. He had a meth conviction he was being sentenced on. He was on probation for a hit and run when he committed this offense. He had marijuana in his trunk. And this court said that the prior record did not outweigh the disparity. And that's what we're saying here, Your Honor. I mean, we can't tell what the court would have done or will do. As Judge Elrod pointed out, I mean, your client is a 27-year-old man who's hitting on a 13-year-old who was his girlfriend's daughter, and now he's married to the former girlfriend, and he wants to go back to the house where he committed this atrocious offense. I mean, she's not going to, she's going to send him back to Mexico, wherever he came from. And Your Honor, if we were here before... After a good lengthy sentence. If we were here, if this were a district court, and the court considered that and exercised its discretion to sentence above the guidelines, so be it. But we're not in a district court. We're here in a court of review to see did the court follow the guideline range, and was the guideline range linked to the sentence? You're making a good argument. You're doing the best you can with what you have. Well, Your Honor, what I have is a mistaking guideline range that was 16 levels higher with a disparity of 21 to 26 months in the guideline range. And this court has said that it considers how substantial the disparity is under the fourth prong. And here it's a substantial disparity. I would note also, if the court's, you know, since we're here on plain error, I think the court should begin its analysis with the fact that this was a foreclosed issue at sentencing based on Cabecerra-Rodriguez, which was an en banc opinion. And so at sentencing, it was foreclosed. It's not like Chavez-Hernandez, where there was a good objection that wasn't objected to. There was no objection or a futile objection, and that's why we're here on plain error. Right now, on this case as well, the Supreme Court is now considering the fourth prong, right? That's correct, Your Honor. But if we rule in your favor now, your man's out of jail right now. Is that right? I believe so, yes, Your Honor. He has about a year to do, so yes. So if we wait until the Supreme Court has ruled on the fourth prong error, is that what you wish, or you want us to, I guess, he wants out of jail now, right? He doesn't want us waiting to see what the Supreme Court would say. Well, that's an interesting question, given our last discussion, Your Honor. I should say I shouldn't be presumptuous. I don't know if he's going to get out of jail now. He may indeed get the same sentence. I'm not sure what the district court will do when faced with a substantially lower guideline range. She may give him 35 months. She may give him whatever, 39 months. I don't know, Your Honor. But yes, to answer your question, I think it would be best, should the court rule so that this issue isn't mooted out. It would be best what? To rule. I'm sorry. Not to wait for Morales. Excuse me, yes. It would be best not to wait. So what guidance would you give us in the interim on the proper applying of the prong four? So that we don't run afoul of Rosales-Morales. Don't, say, shock the conscience, would be some advice you would give us. That would be very judicious, Your Honor. Anything else that you think is wrapped up in this Rosales-Morales? Your Honor, I think that, I don't foresee the Supreme Court saying you shouldn't look at the disparity. So that's one thing I would look at, is the disparity. I think the court, I'm not good at reading tea leaves, Your Honor. I think the disparity, clearly the court can look at, and I'd be shocked if the Supreme Court said that you couldn't. And I think possibly the criminal record. And I think those two things, in this case, given Martinez-Rodriguez, call for a remand for resentencing. Thank you, Your Honor. May it please the Court. Good morning. Jessica Aikens for the United States Supreme Court. As we all know, the Plain Error Rule is designed to capture a very narrow set of errors. And what's unique about this case is that we have so much evidence from the district court that really gives us a better shot of making this third-prong analysis than a lot of cases that we get, where the judge simply sentences a person without any analysis. And we've got a good five pages in this record that lets us know exactly where this district court stood on all the issues that are before you today. And I think this is a third-prong case. I don't think that we actually need to worry about Rosales-Morales, because we have what we need in this case to make a good third-prong case law. So would you want us to wait for the Supreme Court, or would you just say, don't say shock the conscience and don't wait? Well, we're never going to say those three words again. I don't necessarily believe that that case will impact this. If you look at the transcript from the Supreme Court, as they're talking about the fourth-prong, they're still staying very true to the standard in Alano, and we all know what that is. Now, obviously, they're looking at the Fifth Circuit precedent that went a little bit further, but that doesn't change the standard for the fourth-prong. That is still intact, and I don't think there's anything from that transcript that leads you to believe there's going to be a big change. I think they just want to course-correct on the Fifth Circuit, that we don't use that language again, which I think we're all in agreement that we will not. But this is a different record in that we have so much evidence to decide on the third-prong. And if you think about it, we've got a lot of fourth-prong cases out there. They're confusing and sometimes hard to follow, but we don't have a lot of third-prong. I think after Melina Martinez, everyone thought you couldn't make it. And what's interesting about what the Defense Counsel was saying, I think his argument is that any time a district court, I think he used the word, links the sentence to the guideline range, that it's an automatic loss for the government. And I simply don't think that's true. The language in Melina Martinez says an incorrect range can be sufficient to show the reasonable probability, and that's a great standard. But if you go back and look at Melina Martinez and the recent case from this court, Merican, from last week that was corrected, in both of those cases, the court noted the district court did not make any findings, no explanation about the basis for the sentence. That's glaringly different than this case. We've got five pages. She's telling you what she's going to do when it goes back down. I could go through all the facts and everything that you went through, but I think this judge is doing a great job. This is what we want judges to do. We don't want them to just give a sentence and move to the next defendant. We want them to analyze the facts. She looked at both the underlying crime and the fact that he came back into this country six months later when he was not supposed to. He purposely told those Border Patrol agents, my intent is to go back to Dallas to my house where my wife and those four children are. All of those children are minors, 17 and under. One of them is the victim of his sexual abuse crime. This judge is a gatekeeper. She doesn't want him going there. And if you look at this record, she goes through every single 3553 factors. She says, I need to protect the public from you. I need to protect future crimes. He's going back into a house as a sexual predator with a complainant there that he has previously abused. And she said specifically, I need to send a message to you not to continue this behavior. I'm trying to find the right punishment. 42 months was her right punishment. There is no chance she was going to go down. She has put that on the record. Defense counsel mentioned that Miller case about how the judge has to be so explicit. I just don't believe that's the case law of this circuit. I think that we're not asking them to give those magic words. I think she gave us five pages to infer her meaning, which is, I'm not considering anything lower. And her exact words were, I'm not inclined to follow that. As you said, Judge Elrod, she was shocked that a sexual predator could be sentenced to such a low guideline. And she explained her reasons that would show if this got sent back, he'd be buried upward for all the reasons that are already on this record. So I believe, I think this is a great third prong case. I think you have a good opportunity to show why we're not just going to kick everything under Melina Martinez. Because otherwise, is there really a third prong anymore? You know what I mean? If we're just looking at the guideline and it's wrong, that's going to happen a lot. As the law changes, that's what happened in 2016 that they were looking at. And we could go through the fourth prong factors if you'd like. And I think a lot of the same things that support the third also support the fourth prong in terms of fairness, integrity, public reputation. When you're talking about a person who has an aggravated felony, who has reentered the country, and plans on going back to the place where that felony occurred. And the You make a really interesting argument about ruling on the third prong, but what's your best fourth prong case? Fourth prong, I would say... The disparity is a lot. Sure. I understand that. That's interesting you brought that up. This weekend, I was thinking about disparity. And I believe it's a factor, but I could throw you the Wink-A-Rink case that's 180 days disparity, and he could throw you the case from last week that was four months. And so, I do believe it's a factor. I don't think it's the end-all, be-all. I think you can definitely look at it, and if that's all you have, maybe that's when a defendant prevails on the third prong. You look at the facts of the crime, too. Sure. And these other cases that you're talking about that address disparity as the key concern may not be the key concern in this case. I'm sorry? It may not be disparity. It may not be the key concern, given the facts of this case. I agree completely with you. And that one disparity case, the Wink-A-Rink case that was 180 months, was a child pornography case. And I think, you know, that's what we want the judges to do, is look at the actual crime, the underlying criminal history of a defendant, and make that decision. And so when we're looking at the disparity, that definitely comes into play, but I don't think it's the end-all, be-all question. I just think it's... But you're looking, really, I mean, for whatever the fourth prong is, I mean, it is defined as fairness, it is not, as integrity, and public perception. And so, you take the crime, has to be considered in those... Yes, of course it does, Your Honor. ...in that analysis. That's a very good point. And, you know, that was a lot of the discussion in the Rosales-Morales, in the Supreme Court, about fleshing out those things about the public reputation, what the public would think about this. But also coming back to just the basic... I don't think the public would be very upset to leave that summons at four to one months. Well, you're making my point for me. Yeah, I mean, well... Especially when a judge said that she thought 51 would be appropriate in this case. And I don't know that anyone would disagree with that. The integrity of the summons, I mean, here, as you point out, went through five pages, thoroughly considered it from one end to the other. So the summons is certainly backed by the integrity of the judge's analysis. In fairness, when you consider the fact that he, again, the crimes that are involved, and you consider the fact that he just came back into the country after just being... So, I don't know where he is. Doesn't get the defendant too much. Yes, and in this case, it's not just that the judge knew he had committed the crime of illegal reentry again after being gone six months, but every indication she had was that another crime might occur. And for the judge to recognize that and sentence him as something to keep him away when she said, I need to keep you there to keep the public and children safe. You know, this is just what I'll say on the fourth prong. I would be concerned if a ruling came out on the fourth prong in this case, because then we would be disregarding five pages of what the district court judged that I think are imperative to the third prong. If you don't have any other questions for me, the government would ask that you affirm the 42-month sentence. Thank you. Mr. Sokoloff? Briefly, Your Honor. You have five minutes on rebuttal. With regard to the facts, I do think that that is the district court's bailiwick to take those facts. Well, and she's done it, and she's said it. She's said it. And we can't be blind to that, can we? I mean... Well, you can't be blind to the fact that she used the guideline range and said she would do this or that within the guideline range. That's the question. And as then-Judge Gorsuch said on the Tenth Circuit, the benchmark for the entire sentencing process rested on an obvious mistaken premise. I mean, that's what the court of review is looking at. Did it rest on a mistaken premise? And if it did, and if there's a possibility, as Judge Gorsuch or Justice Gorsuch now said, that a person might linger longer in prison, then, as he said, what reasonable citizen wouldn't bear a diminished view of the judicial process, especially because the cost of correction is so small? With regard to Morella's Rosales, I would just urge the court to get ahead of the curve and adopt a presumption on the fourth prong and remand based on that presumption. Thank you, Your Honors. Did they even argue there should be a presumption at the Supreme Court? Virtually, Your Honor. Did they use that, there should be a presumption? I don't know that we should go beyond the Supreme Court arguments. Well, this Court can, but I think... But then they'll appeal this to the Supreme Court. They may or may not. In any case, without being blithe as I was, I would ask, given the... Let me put it a different way. Given the disparity in this case, I would ask that the court remand so that the district court can consider the facts and how much above or below the guideline range is appropriate. Thank you. Thank you. Thank you, sir. We'll call the second case to be argued today.